UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

----oo0oo----

| | |
|---|---|
| KEITH CHANDLER,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>PETE WILSON, Governor of the State of California, In His Official and Individual Capacities; the STATE OF CALIFORNIA; the CALIFORNIA YOUTH AND ADULT CORRECTIONAL AGENCY; JOE SANDOVAL, Secretary, Youth & Adult Correctional Agency, In His Official and Individual Capacities; the CALIFORNIA BOARD OF PRISON TERMS; TED RICH, Chief Executive Officer, California Board of Prison Terms, In His Official and Individual Capacities; THOMAS GIAQUINTO, Commissioner, California Board of Prison Terms, In His Official and Individual Capacities; CAROL BENTLEY, Commissioner, California Board of Prison Terms, In Her Official and Individual Capacities; and DOES 1-25,<br><br>　　　　Defendants. | NO. CIV. S-05-1654 WBS PAN<br><br>MEMORANDUM AND ORDER<br>RE: MOTION TO CORRECT ORDER |

----oo0oo----

Plaintiff Keith Chandler's complaint alleges six causes of action against defendants: (1) violation of plaintiff's constitutional rights, actionable under 42 U.S.C. § 1983, (2) "abuse of process", (3) false imprisonment, (4) malicious prosecution, (5) intentional infliction of emotional distress, and (6) negligent infliction of emotional distress. (Compl.) On November 3, 2005, this court held that defendants California Board of Prison Terms (presently the California Board of Parole Hearings) ("BPT"), Ted Rich, Thomas Giaquinto, and Carol Bentley were absolutely immune from suit and dismissed plaintiff's claims against them.[1] Pursuant to Federal Rule of Civil Procedure 60(a), plaintiff now moves the court to reconsider that order with respect to defendant Rich, who did not argue for absolute immunity.

I. Factual and Procedural Background

Plaintiff was convicted of second degree murder by the Superior Court of the State of California in and for the County of Yolo, and was sentenced to 15 years to life on June 7, 1985. (Compl. ¶ 16.) On July 31, 1991, the BPT found plaintiff suitable for parole and set his parole date for July 2, 1998. (Id. ¶ 17); Chandler v. Mueller, No. Civ. 99-1284, slip op. at 2 (E.D. Cal. June 2, 2004).

However, according to allegations in the complaint, defendant Governor Pete Wilson, motivated by his political aspirations, informed subordinates sometime between 1991 and 1994

---

[1] The other defendants did not join in the motion. At least two of these defendants, Governor Pete Wilson and Joe Sandoval, had not yet been served. (Pl.'s Opp'n to Mot. to Dismiss at 6 n.1.)

2

that some existing grants of parole should be rescinded.  (Compl. ¶¶ 19-20.)  Subsequently, "[d]efendant Rich . . . took steps to ensure that defendant Wilson's desire to have existing parole dates rescinded be followed."  (Id. ¶ 22.)  On September 13, 1994, defendant BPT met for an en banc hearing and voted to schedule a parole rescission hearing, which took place on April 12, 1995.  (Id. ¶¶ 24-25.)  Despite the lack of new evidence to support revocation, defendants Giaquinto and Bentley nevertheless rescinded plaintiff's 1991 grant of parole.  (Id. ¶ 25.)

On June 3, 2004, Judge Singleton (sitting on this court by designation), granted plaintiff's habeas corpus petition, holding that defendant BPT did not have the requisite "good cause" to revoke the 1991 decision to grant plaintiff's parole.[2] (Id ¶ 29); Chandler, No. Civ. 99-1284, slip op. at 6. Consequently, plaintiff was released from state prison on June 5, 2004.  (Compl. ¶ 30.)  On April 14, 2005, defendant BPT officially discharged plaintiff from parole.  (Id. ¶ 35.)

On August 17, 2005, plaintiff filed this suit, seeking compensatory damages of $3,000,000, punitive damages in the amount of $9,000,000, costs and fees, and any other relief the court should deem just.  (Id. at 10 (Prayer for Relief).)

---

[2] In the opinion granting plaintiff's habeas petition, Judge Singleton described both the 1991 and 1994 parole hearings.  The 1994 panel rescinded plaintiff's parole because "the granting panel failed to adequately consider the inmate's obsessive minimazation [sic] of his participation in the crime." Chandler, No. Civ. 99-1284, slip op. at 2.  The panel concluded that this oversight constituted "a fundamental error resulting in an improvident grant."  Id.  From the opinion, it is not clear that this concern was actually considered by the 1991 panel, despite the fact that they "questioned Chandler in detail regarding his specific role in the crime."  Id. at 1.

3

1 Originally, plaintiffs claims were against defendants Wilson,
2 Rich, Giaquinto, Bentley, Sandoval, the State of California, BPT,
3 the Youth and Adult Correctional Agency, the California
4 Department of Corrections, and Does 1-25.  However, in its
5 November 3, 2005 Order, this court dismissed defendants Rich,
6 Giaquinto, Bentley, and the BPT from this case.  Plaintiff now
7 challenges that order with respect to Rich, because dismissal was
8 based on absolute immunity, a defense that Rich did not raise or,
9 in plaintiff's opinion, deserve.

II. Discussion

   A.   Rule 60(a) Standard

       Plaintiff brings his motion pursuant to Federal Rule of Civil Procedure 60(a), which permits the court, on "its own initiative or on the motion of any party," to correct clerical errors in its orders.  Primarily, the rule provides courts with a means to conform an unclear judgment to a prior oral ruling. Buchanan v. United States, 755 F. Supp. 319, 324 (D. Or. 1990). "A district court is not permitted, however, to clarify a judgment pursuant to Rule 60(a) to reflect a new and subsequent intent because it perceives its original judgment to be incorrect."  Burton v. Johnson, 975 F.2d 690, 694 (10th Cir. 1992).  In other words, "Rule 60(a) does not apply when the court changes its ruling because of a legal or factual mistake." Ground v. Sullivan, 785 F. Supp. 1407, 1411 (S.D. Cal. 1992) (citing Blanton v. Anzalone, 813 F.2d 1574, 1577 n. 2 (9th Cir. 1987)).

       In the instant case, the original order granting defendant's motion to dismiss was flawed not because it failed to

4

capture the court's intent, but rather because it was based on a factual mistake. The court mistakenly grouped defendant Rich with other defendants who argued for absolute immunity. Consequently, defendant Rich (who, as the Chief Executive Officer of the BPT, did not actually participate in the Board's decision to revoke plaintiff's parole) was afforded a brand of quasi-judicial immunity applicable to parole board members only "when they decide to grant, deny, or revoke parole."[3] Sellars v. Procunier, 641 F.2d 1295, 1302-03 (9th Cir. 1981); see also Swift v. California, 384 F.3d 1184, 1190, 1193 (9th Cir. 2004) (holding that parole officials who play "only a preliminary role . . . in a determination to revoke [parole]" are not entitled to absolute immunity (clarifying Anderson v. Boyd, 714 F.2d 906 (9th Cir. 1983)); McGrew v. Tex. Bd. of Pardons & Paroles, 47 F.3d 158, 161 (5th Cir. 1995) ("Although parole board members who personally participate in the 'quasi-judicial activity of revoking parole' are absolutely immune from suit, other executive officers who are responsible for promulgating the rules and policies governing such proceedings are entitled only to qualified immunity.").

The fact that the court failed to consider defendant Rich's other immunity arguments further demonstrates that his

---

[3] The complaint does not allege that defendant Rich participated in the decision to revoke plaintiff's parole and accuses him only of having "specifically [taken] steps to ensure that Defendant Wilson's desire to have existing parole dates rescinded be followed." (Compl. ¶ 22.) Indeed, defendant Rich argued in support of his motion to dismiss that he "was not a member of the Board of Prison Terms, nor did he participate in any of their decisions . . . ." (Defs.' Mem. of P. & A. in Supp. of Mot. to Dismiss 11.) Therefore, this court erred when it awarded him immunity reserved for the quasi-judicial actions of Board members involved in the actual decision to revoke parole.

5

inclusion among the absolutely immune defendants was more than a mere typographical error.  The court simply misconstrued his role in the revocation decision and ergo applied the wrong legal standard when considering whether to dismiss him from the case.  Such substantive errors are not the proper subject matter for a Rule 60(a) motion to amend.

However, the court's inability to grant plaintiff's requested relief under Rule 60(a) is not dispositive of this motion.  "Nomenclature is not controlling" when a court considers a post-judgment motion for relief and a court should construe the motion "however styled, to be the type proper for the relief requested." Miller v. Transamerican Press, Inc., 709 F.2d 524, 527 (9th Cir. 1983).  Here, since plaintiff essentially seeks reconsideration of the court's November 3, 2005 Order because it was based on a mistaken understanding of the facts, he may still succeed under Federal Rule of Civil Procedure Rule 60(b)(1).  See Aspex Eyewear, Inc. v. Miracle Optics, Inc., No. CV 01-10396, 2004 U.S. Dist. LEXIS 27574, at *6 (C.D. Cal. Nov. 16, 2004) (construing a motion under Rule 60(a) as one under Rule 60(b)(4)).

B.   Rule 60(b)(1) Standard

Rule 60(b)(1) allows the court, "[o]n motion and upon such terms as are just," to relieve a party from a final order for "mistake, inadvertence, surprise, or excusable neglect."  If filed "within a reasonable time not exceeding the time for appeal," such motions can be used by a trial court to correct judicial errors. Gila River Ranch, Inc. v. United States, 368 F.2d 354, 357 (9th Cir. 1966); Kingvision Pay-Per-View Ltd. v.

Lake Alice Bar, 168 F.3d 347, 350 (9th Cir. 1999) ("[T]he words 'mistake' and 'inadvertence' . . . may include mistake and inadvertence by the judge.").

      Here, plaintiff filed his motion on November 30, 2005, challenging an order issued on November 3, 2005.  Thus, his motion was timely as it fell within the 30 day period for filing an appeal.  See 28 U.S.C. § 2107(a); Fed. R. App. P. 4(a)(1)(A).  However, because the court erroneously held that defendant Rich was protected by absolute immunity, it did not consider whether his dismissal was nevertheless warranted for other reasons.  Justice will not be served if claims against defendant Rich proceed when he argued for, and was entitled to, some other form of immunity.  Consequently, in order to relive plaintiff of this court's November 3, 2005 Order "upon such terms as are just," the court must consider the merits of these arguments.

    C.   Qualified Immunity

      In his motion to dismiss, defendant Rich first argued for qualified immunity.  Qualified immunity is a generous standard designed to protect "all but the plainly incompetent or those who knowingly violate the law."  Schroeder v. McDonald, 41 F.3d 1272, 1279 (9th Cir. 1994) (quoting Burns v. Reed, 500 U.S. 478, 495 (1991)); see also Gasho v. United States, 39 F.3d 1420, 1438 (9th Cir. 1994).  The doctrine applies even in cases where the defendant violated the plaintiff's constitutional rights, so long as the unlawfulness of the challenged action was not readily apparent.  Id.; Meyers v. Redwood City, 400 F.3d 765, 770 (9th Cir. 2005).  Therefore, to come within its protections, an officer need only demonstrate (1) that the law governing his

1  conduct was not clearly established at the time of the challenged
2  actions, or (2) that under the clearly established law, he could
3  reasonably have believed that the alleged conduct was lawful.
4  See Katz v. United States, 194 F.3d 962, 967 (9th Cir. 1999);
5  Mendoza v. Block, 27 F.3d 1357, 1360 (9th Cir. 1994); see also
6  Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982) (holding "that
7  government officials performing discretionary functions generally
8  are shielded from liability for civil damages insofar as their
9  conduct does not violate clearly established statutory or
10 constitutional rights of which a reasonable person would have
11 known.").

12          As an initial matter, though, the court must determine
13 whether the alleged conduct actually violated a constitutional
14 right.  Meyers, 400 F.3d at 770.  "If no constitutional right
15 would have been violated were the allegations established, there
16 is no necessity for further inquiries concerning qualified
17 immunity."  Saucier v. Katz, 533 U.S. 194, 201 (2001).  Here,
18 plaintiff had a constitutional right to due process in a
19 California state parole revocation proceeding.  In re Powell, 45
20 Cal. 3d 894, 902 (1998).  Moreover, courts have, subsequent to
21 the revocation of plaintiff's parole in 1995, determined that a
22 decision to "resc[ind] a parole release date merely because
23 'reasonable minds could differ' [regarding] the prisoner's
24 suitability for parole" falls short of the constitutional
25 requirement that "some evidence" support a decision to revoke.
26 In re Caswell, 92 Cal. App. 4th 1017, 1029 (2001); see also
27 McQuillion v. Duncan, 306 F.3d 895, 908 (9th Cir. 2002).
28          However, although plaintiff had a constitutional right

8

to due process in a parole revocation proceeding, the procedural requirements for such a proceeding were not entirely clear at the time of his hearing.  Sweeping statements from the California Supreme Court recognizing the BPT's "great" and "almost unlimited" discretion in parole matters and permitting the BPT to "determine[], in its discretion, that parole was 'improvidently granted' under the circumstances that appeared <u>at the time of the grant</u>" certainly suggested that a parole candidate's rights would not be violated if a later panel simply disagreed with the prior panel's decision to grant parole.  <u>In re Powell</u>, 45 Cal. 3d at 902 (emphasis added).  Indeed, in <u>In re Johnson</u>, 35 Cal. App. 4th 160 (1995), decided just one month after plaintiff's recision hearing, a California court held that inadequate consideration of evidence by the granting board could support recision at a later date.  <u>Id.</u> at 168-70.  <u>But see</u> <u>In re Caswell</u>, 92 Cal. App. 4th at 1029 (limiting <u>Johnson</u> to situations where a grant of parole "cannot be reconciled with the evidence before the granting panel, or when the granting panel . . . explicitly declined to consider information germane to the gravity of the crimes").

     Evidently, the law governing the BPT's conduct was not clearly established at the time of the challenged actions. Specifically, it was not clear, at the time, that the BPT could not rescind a grant of parole based on "[t]he granting panel['s] fail[ure] to adequately consider the inmate's obsessive minimazation [sic] of his participation in the crime . . . ." <u>Chandler</u>, No. Civ. 99-1284, slip op. at 2 (quoting the panel's reasons for revocation).  Indeed, the law in this area arguably remains unclear to this day.  Judge England recently held that

9

California state prisoners do not have a federal liberty interest in parole and are, accordingly, "not entitled to federal due process protections as a matter of right." Sass v. Cal. Bd. of Prison Terms, 376 F. Supp. 2d 975, 983 (E.D. Cal. 2005).

Furthermore, under the clearly established law, defendant Rich "could reasonably have believed that [his] alleged conduct was lawful." The complaint notes only that "Defendant Rich specifically took steps to ensure that Defendant Wilson's desire to have existing parole dates rescinded be followed." (Compl. ¶ 22.) According to California law however, defendant Rich was powerless to interfere with Governor Wilson's efforts to reconsider parole grants. California Penal Code § 3041.1 empowered the governor to, "[u]p to 90 days prior to a scheduled parole release date, . . . request review of any decision concerning the grant or denial of parole to any prisoner in a state prison." In the event of such a request, the full board, sitting en banc, was required to review the parole decision.[4] Id. Defendant Rich had no role to play here. Because the rescinding board's actions were not necessarily contrary to clearly established law and because defendant Rich could reasonably have believed that he was not in a position to block the revocation of plaintiff's parole, defendant Rich is entitled to qualified immunity for the actions complained of here.[5]

---

[4] This procedure was recently changed pursuant to S.B. 737, Reg. Sess. (Cal. 2005).

[5] Moreover, even if not deserving of qualified immunity, defendant Rich simply cannot be held responsible for the decision to revoke plaintiff's parole. Even if, as alleged, defendant Rich was "responsible for ensuring that California operated its

10

III. Conclusion

Although the court erred in granting defendant Rich absolute immunity in its November 3, 2005 Order, this mistake had no impact on plaintiff's legal rights. Defendant Rich should have been granted qualified immunity in the previous order and he therefore remains immune from suit for the actions complained of here.

IT IS THEREFORE ORDERED that this court's November 3, 2005 Order be MODIFIED to the extent that it purported to grant defendant Rich's motion to dismiss based on absolute immunity and defendant Rich's motion to dismiss is hereby GRANTED for the reasons set forth in this order.

DATED: January 13, 2006

WILLIAM B. SHUBB
UNITED STATES DISTRICT JUDGE

---

parole system in compliance with State and Federal Constitutional mandates and with respect for the rights of inmates appearing before it," (compl. ¶ 11), he was not empowered to interfere with the Governor and the Board's decision to revisit and revoke plaintiff's parole. See Cal. Penal Code § 3041.1 (creating procedures for recision that involve only the governor and the Board); see also Cal. Penal Code § 3063 (permitting the Board to rescind parole "for cause").